UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Bankr. No. 09-10105 |
| | ) | Chapter 7 |
| GARRETT E. PRIEST | ) | |
| SSN/ITIN xxx-xx-1067 | ) | |
| | ) | DECISION RE:  MOTION |
| and | ) | FOR JUDGMENT ON THE |
| | ) | PLEADINGS WITH RESPECT TO |
| NIKKI ANNE PRIEST | ) | MOTION TO DISMISS FOR ABUSE |
| SSN/ITIN xxx-xx-5162 | ) | PURSUANT TO 11 U.S.C. § 707(b)(3) |
| | ) | |
| Debtors. | ) | |

The matter before the Court is the United States Trustee's Motion for Judgment on the Pleadings with respect to his pending Motion to Dismiss for Abuse Pursuant to 11 U.S.C. § 707(b)(3), which the Court, in compliance with Fed.R.Bankr.P. 7012 and Fed.R.Civ.P. 12(d), is treating as a motion for summary judgment.[1]  This is a core proceeding under 28 U.S.C. § 157(b)(2).  This decision and accompanying order shall

---

[1] Pursuant to Bankr. D.S.D. R. 9014-3(b), "Fed.R.Civ.P. 12(c) applies in contested matters."  Rule 9014-3(b) does not specifically reference Fed.R.Civ.P. 12(d), which provides:

> If, on a motion under Rule . . . 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

However, because Debtors submitted an affidavit (doc. 79-1) in support of their response (doc. 79) to the United States Trustee's motion (doc. 75), the Court informed counsel it would treat the United States Trustee's motion as one for summary judgment and gave the parties an opportunity to present any additional material that was pertinent to the United States Trustee's motion.  Only the United States Trustee submitted additional material (doc. 81).

constitute the Court's findings and conclusions under Fed.Rs.Bankr.P. 7052 and 9014(c). As discussed below, the United States Trustee's motion will be granted.

I.

In his Motion to Dismiss for Abuse Pursuant to 11 U.S.C. § 707(b)(3) (doc. 67), the United States Trustee alleged, *inter alia*:

> 4. Debtors are individuals and have what appear to be primarily consumer debts. (See, Debtors' Petition and Schedules D, E, and F.)
>
> 5. On their Schedule D (Creditors Holding Secured Claims), Debtors listed six secured creditors with claims totaling $202,577.47.
>
> 6. On their Schedule E (Creditors Holding Unsecured Priority Claims), Debtors listed two creditors with claims totaling $6,106.00.
>
> 7. On their Schedule F (Creditors Holding Unsecured Nonpriority Claims), Debtors listed 33 unsecured creditors with claims totaling $126,141.46.
>
> 8. On their Schedules I and Amended Schedule J, Debtors listed $4,539.27 of monthly take-home pay and $4,484.00 of monthly expenses, leaving monthly disposable income of $55.27.
>
> . . .
>
> 11. It appears that Debtors may have understated their income on Schedule I. According to her recent pay advices, Mrs. Priest earns net monthly income of $2,104.48 (after disallowing a deduction of $50.00 per pay period for "Invest"). According to recent pay advices submitted for Mr. Priest, he receives monthly net income of $3,386.31. It appears the Debtors have total monthly net income of $5,490.79.
>
> 12. Further, it appears certain expenses on Debtors' Amended Schedule J must be adjusted. The Debtors have scheduled a student loan payment of $320.00. While this debt may be nondischargeable, it is not entitled to be treated better than the other unsecured obligations[.] When that payment is removed, the Debtors have monthly expenses of $4,134.00.

>When their monthly expenses are deducted from their income of $5,490.79, the Debtors are left with monthly disposable income of $1,356.79. Such a sum would permit Debtors to repay $74,080.73 to their unsecured creditors after payment of chapter 13 trustee fees.
>
>13. Further, the Debtors budgeted $1,859.00 for mortgage payments for a house which will be surrendered to the secured creditor. If they are able to obtain replacement housing for less than $1,859.00 per month, they will have even more disposable income with which to repay creditors.

In their objection to the United States Trustee's motion (doc. 71), Debtors admitted the United States Trustee's allegations regarding the information contained in their schedules, but alleged, *inter alia*:

>2. . . . Debtor Nikki Anne Priest has significantly less income than calculated by the [United States] Trustee. . . . [F]or the periods ending March 7, 2010, and March 21, 2010, respectively, [she earned] bi-weekly gross income of $1,108.03 and $1,045.15 and [bi-weekly] net income of $753.35 and $703.25.
>
>3. [When Debtors prepared their] Schedules I and J, Debtor Nikki Anne Priest had been working a significant amount of overtime hours in a newly remodeled Hy-Vee store.
>
>4. . . . Debtor Nikki Anne Priest will no longer be receiving overtime hours.
>
>. . .
>
>7. . . . Debtors have restructured their principal mortgage payment to establish a payment of $1,491.96 on their principal mortgage. . . .
>
>8. . . . Debtor[s] ha[ve] a second mortgage in favor of Citifinancial. That second mortgage has a payment of $230.00.
>
>9. . . . Debtors will not be surrendering their home and will, therefore, have monthly mortgage payments . . . of $1,721.00.

In his motion for judgment on the pleadings (doc. 75), the United States Trustee argued Debtors still have the ability to fund a meaningful chapter 13 plan, even with their loss of income.  In their response (doc. 79) to the United States Trustee's motion, Debtors claimed their expenses had changed since they filed their amended schedule J (doc. 61-1).  In support of their response, Debtors submitted an affidavit of Debtor Garrett Priest (doc. 79-1), in which he identified the following additional expenses:

> 8. . . . Debtors' homestead will need a new roof to maintain [Debtors'] homeowners insurance.
>
> 9. [Debtors] received a $4000.00 estimate for repair of the new roof.
>
> 10. . . . [Debtors'] furnace/heater and air conditioner will need to be replaced.  Both of these items require a $3500.00 and $3800.00 estimated repair cost in the future.
>
> 11. [Debtors'] daycare cost has increased by $400.00 monthly because [Debtor Nikki Anne Priest] has to commence work earlier in the morning.
>
> 12. [Debtors'] minor children are in need of braces.  The cost of this has been estimated at $8000.00.
>
> 13. As a result, [Debtors] will incur an additional $430.00 in actual monthly expenses over the next 60 month[s].
>
> 14. Further, [Debtors] learned in Debt Counseling [they] should save up to 6 months of living expenses to obtain an emergency fund for emergency expenses.
>
> 15. [Debtors have] not been able to accrue that reserve.
>
> 16. Finally, in [preparing their] Amended Schedules I and J, [Debtors] estimated the bare minimum expenses and did not anticipate any

increases in those expenses within the next 12 months.

17. However, [Debtors believe] Auto Repairs will significantly increase as [Debtors'] vehicle[s] are already over 10 years old.

As noted above, the United States Trustee presented additional material that was pertinent to his motion. In his submission (doc. 81), the United States Trustee – undeterred by the fluidity of Debtors' figures – argued Debtors still have the ability to fund a meaningful chapter 13 plan, even with their additional expenses.

The matter was taken under advisement.

II.

**Summary judgment.** Summary judgment is appropriate when "there is no genuine issue [of] material fact and . . . the [moving party] is entitled to judgment as a matter of law." Fed.R.Bankr.P. 7056 and Fed.R.Civ.P. 56(c)(2). An issue of material fact is *genuine* if it has a real basis in the record. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (quotes therein). A genuine issue of fact is *material* if it might affect the outcome of the case. *Id.* (quotes therein).

The matter must be viewed in the light most favorable to the party opposing the motion. *F.D.I.C. v. Bell*, 106 F.3d 258, 263 (8th Cir. 1997). Where motive and intent are at issue, disposition of the matter by summary judgment may be more difficult. *Cf. Amerinet, Inc. v. Xerox Corp.*, 972 F.2d 1483, 1490 (8th Cir. 1992) (citation omitted).

The movant meets his burden if he shows the record does not contain a genuine

issue of material fact and he points out that part of the record that bears out his assertion. *Handeen v. Lemaire*, 112 F.3d 1339, 1346 (8th Cir. 1997) (quoting therein *City of Mt. Pleasant, Iowa v. Associated Electric Coop.*, Inc., 838 F.2d 268, 273 (8th Cir. 1988)). No defense to an insufficient showing is required. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 161 (1970) (citation therein); *Handeen*, 112 F.3d at 1346.

If the movant meets his burden, however, the nonmovant, to defeat the motion, "must advance specific facts to create a genuine issue of material fact for trial." *Bell*, 106 F.3d at 263 (quoting *Rolscreen Co. v. Pella Products of St. Louis, Inc.*, 64 F.3d 1202, 1211 (8th Cir. 1995)). The nonmovant must do more than show there is some metaphysical doubt; he must show he will be able to put on admissible evidence at trial proving his allegations. *Bell*, 106 F.3d at 263 (citing *Kiemele v. Soo Line R.R. Co.*, 93 F.3d 472, 474 (8th Cir. 1996), and *JRT, Inc. v. TCBY Systems, Inc.*, 52 F.3d 734, 737 (8th Cir. 1995)).

**Dismissal for abuse.** The Court may dismiss a chapter 7 case "if it finds that the granting of relief would be an abuse of the provisions of [chapter 7]." 11 U.S.C. § 707(b)(1).

> In considering under [§ 707(b)](1) whether the granting of relief would be an abuse of the provisions of [chapter 7] in which the presumption in [§ 707(b)(2)](A)(I) . . . does not arise or is rebutted, the court shall consider –
> 
> . . .
> 
> (B) [whether] the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse.

11 U.S.C. § 707(b)(3).

Like its predecessor,[2] which did not define "substantial abuse," § 707(b)(3) does not define "abuse." However, it has long been the law in the Eighth Circuit that a chapter 7 debtor's ability to fund a chapter 13 plan is the primary factor to be considered in determining whether granting relief would be *substantial* abuse. *In re Walton*, 866 F.2d 981, 984-85 (8th Cir. 1989). The Court of Appeals has consistently followed this premise. *Stuart v. Koch* (*In re Koch*), 109 F.3d 1285, 1286 (8th Cir. 1997); *Fonder v. United States*, 974 F.2d 996, 999 (8th Cir. 1992); and *United States Trustee v. Harris*, 960 F.2d 74, 76-77 (8th Cir. 1992). If the ability to fund a chapter 13 plan constituted *substantial* abuse under § 707(b)(3)'s predecessor, the Court can think of no reason why that same ability should not also constitute the adjective-less abuse now required under § 707(b)(3). This is especially true in light of the fact § 707(b) no longer includes a presumption in favor of granting the debtor relief under chapter 7.[3]

### III.

In this case, the Court must first determine Debtors' combined monthly net income. Debtors have not challenged the United States Trustee's calculation of

---

[2] Section 707(b) was amended effective October 17, 2005 by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. Prior to its amendment, § 707(b) permitted a court to dismiss a chapter 7 case if it found "the granting of relief would be a substantial abuse of the provisions of [chapter 7]."

[3] Prior to its amendment in 2005, § 707(b) provided, "There shall be a presumption in favor of granting the relief requested by the debtor."

Debtor Garrett Priest's monthly net income of $3,386.31.[4]  Debtors have offered two bi-weekly pay stubs – one showing "NET PAY" of $753.35 (doc. 71-1), and the other showing "NET PAY" of $703.25 (doc. 71-2) – as evidence of Debtor Nikki Anne Priest's monthly net income.  Taking the average of those two pay stubs and converting the resulting average bi-weekly net income to monthly net income, the Court finds Debtor Nikki Anne Priest has monthly net income of $1,577.98.[5]  However, the United States Trustee has objected to the deduction of $50.00 per pay period from Debtor Nikki Anne Priest's wages for "INVEST."  Debtors have not challenged the United States Trustee's objection, offered any explanation for the deduction, or demonstrated it is a reasonable and necessary expense.  The Court will therefore disallow the deduction.  This increases Debtor Nikki Anne Priest's monthly net income by $108.33[6] and gives Debtors combined monthly net income of $5,072.62.

The Court must next determine Debtors' reasonable and necessary monthly expenses.  According to their amended schedule J (doc. 61-1), Debtors' monthly expenses total $4,484.00.  However, the United States Trustee has objected to

---

[4] Pursuant to Bankr. D.S.D. R. 9014-1(a), "[a]n objection or other response to a motion, application, plan, or other request for relief must comply with Fed.Rs.Civ.P. 8, 10, and 12.  A general denial or mere request for a hearing is insufficient."

[5] $753.35 + $703.25 ÷ 2 = $728.30 average bi-weekly net income X 26 bi-weekly pay periods in a year = $18,935.80 annual net income ÷ 12 months in a year = $1,577.98 monthly net income.

[6] $50.00 bi-weekly deduction X 26 bi-weekly pay periods in a year = $1,300.00 annual deduction ÷ 12 months in a year = $108.33 monthly deduction.

Debtors' $320.00 payment for "Student Loan."  Debtors cannot prefer a student loan creditor over other unsecured creditors. *See Groves v. LaBarge* (*In re Groves*), 39 F.3d 212, 214-16 (8th Cir. 1994).  The Court will therefore disallow this expense and reduce Debtors' monthly expenses by $320.00.  In addition, Debtors have refinanced the first mortgage on their home, thereby reducing their total monthly mortgage payments from $1,859.00 to $1,721.96.  The Court will therefore reduce Debtors' monthly expenses by the difference of $137.04.  On the other hand, Debtors have claimed additional monthly expenses – not reflected on their original schedule J (doc. 1, p. 28) or their amended schedule J (doc. 61-1) or in their objection to the United States Trustee's motion to dismiss – totaling $430.00 per month.  The Court was unable to determine how Debtors arrived at this figure, and several of the newly discovered expenses could certainly be deferred.  However, for the purposes of the present motion, the Court will accept Debtors' figure and will increase Debtors' monthly expenses by $430.00.  With these adjustments, Debtors have monthly expenses totaling $4,456.96.

Debtors therefore have monthly disposable income of $615.66.  If Debtors were to commit that sum to funding a chapter 13 plan, they could pay their unsecured creditors $22,163.76, less chapter 13 trustee fees, over a 36-month period or $36,939.60, less chapter 13 trustee fees, over a 60-month period.  Debtors thus have the ability to fund a meaningful chapter 13 plan.  *In re Thomas Wayne McNary and Janet Marjorie McNary*, Bankr. No. 08-50120, slip op. at 5 (Bankr. D.S.D. July 18,

2008) (debtors who could pay $16,632.00, less chapter 13 trustee fees, over a 36-month period or $27,720.00, less chapter 13 trustee fees, over a 60-month period had the ability to fund a meaningful chapter 13 plan). Consequently, granting them relief would be an abuse of the provisions of chapter 7.

The United States Trustee also questioned the propriety of Debtors' decision to pay $1,721.96 per month for their home – more than 225% of the Internal Revenue Service standard of $761.00 for housing for a family of five living in Codington County – when they have no equity to protect[7] and they need to invest an additional $11,300.00 in it to replace the roof and repair or replace the furnace and the air conditioner. Under the circumstances, Debtors are throwing good money after bad, and they are doing so at the expense of their unsecured creditors. Were Debtors to find more affordable housing, they would be able to commit the savings to paying their unsecured creditors. Their unwillingness to do so provides additional cause for the dismissal of their case. See In re Patricia Arlene Dougherty, Bankr. No. 08-40378, bench ruling (Bankr. D.S.D. Oct. 8, 2008) (chapter 13 debtor's proposal to retain a house worth between $260,000.00 and $300,000.00 by making payments of more than $2,500.00 per month, when the Internal Revenue Service standard for housing for a family of two living in Lincoln County was only $858.00 per month, when she had no equity in the house to protect or preserve, and when her unsecured creditors

---

[7] According to their schedule A, Debtors' home is worth $22,577.47 less than the debt against it.

-11-

would receive virtually nothing under her proposed plan, did not evidence good faith).

The Court will enter an order granting the United States Trustee's Motion for Judgment on the Pleadings. Debtors did not request an opportunity to convert their case to chapter 13 should the Court find abuse under § 707(b)(3). Consequently, their case will be dismissed.

Dated: July 23, 2010.

BY THE COURT:

*[signature]*

Charles L. Nail, Jr.
Bankruptcy Judge

**On the above date, a copy of this document was mailed or faxed to the parties shown on the Notice of Electronic Filing as not having received electronic notice and Debtor(s), if Debtor(s) did not receive electronic notice.**

**Frederick M. Entwistle**
**Clerk, U.S. Bankruptcy Court**
**District of South Dakota**

NOTICE OF ENTRY
Under Fed.R.Bankr.P. 9022(a)

This order/judgment was entered on the date shown above.

Frederick M. Entwistle
Clerk, U.S. Bankruptcy Court
District of South Dakota